**INDIANA DEPARTMENT OF PUBLIC WELFARE and St. Joseph County Department of Public Welfare, Appellants–Respondents,**

v.

**Carmen DELVALLE and R.F. by Carmen J. DelValle, Mother and Next Friend, Appellees–Petitioners.**

**No. 20A03–9110–CV–316.**

Court of Appeals of Indiana,
Third District.

July 30, 1992.

Linley E. Pearson, Atty. Gen., Wendy Stone Messer, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellants-respondents.

Aladean M. Derose, South Bend, for appellees-petitioners.

GARRARD, Judge.

This is an appeal from a trial court's order which held that portions of child support payments collected by the state from a child's father were wrongfully retained by the state and applied toward Medicaid expenses incurred incident to the child's birth instead of being paid to the child for his support. We affirm.

Carmen DelValle (DelValle) received Assistance to Families with Dependent Children (AFDC) for herself and two children. AFDC is a public assistance program administered by the St. Joseph Department of Public Welfare (SDPW). One of DelValle's

children, R.F., was born on November 18, 1980, and was added to the assistance unit effective January, 1981. At that time, Del-Valle also executed an assignment of her support rights to the state.

On June 17, 1981, Reynaldo Fuentes (Reynaldo) was adjudicated the father of R.F., and a support order of $20.00 per week was entered against him. The June 17, 1981, court order also directed Reynaldo to pay all the prenatal and postnatal expenses incident to the birth of R.F. and to reimburse SDPW for any of those expenses which were advanced by Medicaid. SDPW claims Medicaid paid $3,566.00 for expenses incident to R.F.'s birth.

Subsequently, Reynaldo joined the armed services and under an assignment of rights the military forwarded to the state a sum averaging between $200.00 and $220.00 per month. The amount represented the standard military allotment for one child. During this period of time, DelValle was receiving $86.90 per month from SDPW for R.F. Furthermore, DelValle received less than $200.00 per month in total AFDC assistance for herself and her two children from SDPW.

Prior to the enactment of the Deficit Reduction Act (P.L. 98–369, SEC. 2640, effective October 1, 1984), DelValle could have opted to remove R.F. from the AFDC grant and to receive child support directly from Reynaldo. In that case, her family would have been eligible for more assistance because she and her other child could have continued receiving AFDC benefits in addition to the support Reynaldo sent to R.F. However, DelValle was repeatedly told by SDPW, through her caseworker, that the amount collected on R.F.'s behalf was only $86.90 per month. DelValle relied on this information and decided not to remove R.F. from AFDC.

In October, 1984, DelValle obtained a copy of a court docket sheet and learned that Reynaldo had actually been sending over $200.00 per month for R.F. instead of the $86.90 per month figure SDPW had told her was being sent. SDPW told her it did not know of the higher amount because the Indiana Department of Public Welfare (IDPW) had not provided that information to SDPW. At that time, DelValle no longer had the option of receiving R.F.'s child support directly from Reynaldo in addition to the other AFDC benefits for herself and her other child because of the Deficit Reduction Act. As a result, DelValle claims she is entitled to the money collected in R.F.'s behalf and not distributed to him during the months when she could have taken him off the AFDC grant had she known the actual amount being collected.

DelValle sought and was granted a hearing before IDPW regarding the withheld portions of the payments. The hearing was conducted on July 2, 1985, and the hearing officer rendered a recommendation adverse to DelValle on September 4, 1985. The hearing officer sustained the notification procedures of IDPW whereby IDPW regularly notified SDPW of the monthly support collection up to the required support obligation for that month, but did not notify SDPW as to the total of support payments received. DelValle next appealed to the Indiana State Board of Public Welfare (Board). On November 6, 1985, the Board affirmed the recommendation of the hearing officer. As a result, DelValle sought judicial review of the administrative order by filing suit on November 25, 1985, in the St. Joseph Circuit Court. After a motion for a change of venue was granted, the cause was venued to Elkhart Circuit Court on February 10, 1986.

On February 18, 1988, DelValle moved for summary judgment, and both parties submitted memoranda in support of their positions. DelValle asserted that federal regulations combine to impose a duty on the state to inform AFDC recipients of the amounts collected on their behalf and the relevant amount to be reported was the current month's total support payment. DelValle contended that had she been notified about the total amount of monthly support collected on behalf of R.F., she would have taken R.F. off AFDC and collected the support directly as was her option prior to the Deficit Reduction Act.

IDPW and SDPW countered that the state had fulfilled its only explicit duty

under the federal regulations, that is, to inform the county of the amount of collection which represented payment on the required support obligation (as opposed to the total amount of support received). They claimed that direct notice to recipients was not required. Furthermore, the state challenged DelValle's actual knowledge of the total amount of the support or her ability to ascertain such amount by pointing out that she could have inquired earlier with the St. Joseph County clerk to determine how much support Reynaldo sent to the clerk to forward to the state, and then to R.F. In addition, IDPW and SDPW noted that even if a portion of R.F.'s support payments were improperly withheld, R.F. was entitled to only $83.00. IDPW and SDPW arrived at the $83.00 figure by totalling support collections from January 1981 to October 1984 ($6,289.00) and then offsetting that amount by payments: $2,640.00 for AFDC benefits paid on R.F.'s behalf during that period and $3,566.00 for payments advanced by Medicaid attendant to R.F.'s birth.

The Honorable Gene R. Duffin, Elkhart Circuit Court Judge, took the summary judgment motion under advisement on May 12, 1988. On June 24, 1991, Judge Duffin found for DelValle and remanded the case to IDPW for further proceedings. In relevant part, his order stated:

> During the period of time the Department of Public Welfare collected the sum $6,289.00 from or on behalf of Raynaldo [sic] Fuentes and paid to the Plaintiff the sum of $2,640.00 for R.F. thereby benefiting to the extent of $3,649.00. The Plaintiff requested information from both the Clerk and the Department of Public Welfare on several occasions to determine the amount of money they were receiving via the military allotment and was never given the correct amount and was never able to make a meaningful decision regarding whether to keep the child as a recipient of welfare or not.
>
> . . .
>
> The area of dispute involves payment of $3,566.00 on behalf of R.F. by Medicaid for which the Department of

Public Welfare is receiving credit which would leave a net amount due to the Plaintiff of $83.00.

> The Court now determines that the Defendant improperly attributed Medicaid benefits to the Plaintiff against the amounts of money received by them from the military allotment.

> .     .     .     .     .

(R. pp. 173–74) As a result of the order, IDPW and SDPW appeal.

The sole issue the state raises on appeal is whether the trial court erred by not allowing IDPW and SDPW to attribute portions of the assistance received from the military allotment for R.F.'s support to Medicaid expenses incurred incident to R.F.'s birth.

Although it formed the basis of the state hearing officer's determination against DelValle, the trial court did not expressly address the issue of IDPW and SDPW's duty to provide notice of the total amount of support per month received from a third party for a child's support. However, by ruling that DelValle, on behalf of her son, R.F., is entitled to reimbursement of monies collected by the IDPW in addition to what was paid out by SDPW for R.F.'s support, and by stating it was not bound by an administrative agency's interpretation of law, the trial court apparently ruled that DelValle was entitled to notice, especially in response to direct inquiries by a recipient of assistance. In any event, we decline to address this issue because the state does not raise it on appeal in its appellate brief, thus waiving it. *See Jaremczuk v. State* (1978), 177 Ind.App. 628, 380 N.E.2d 615, 617; Ind. Appellate Rule 8.3(A)(7). In fact, the state fails to challenge the trial court's ruling that IDPW and SDPW improperly withheld the surplus of support payments that were not paid to R.F. The state admits that even if the Medicaid expenses were properly paid out of the surplus support payments, IDPW and SDPW still owe an additional $83.00 as remaining surplus to R.F. and DelValle. The state confines its appeal to the allegation that the Medicaid costs owed by Reynaldo incident to R.F.'s birth could be deducted from the

withheld surplus of support payments instead of being sent directly to R.F. as support. In this case, we disagree.

The state correctly contends that IDPW and SDPW have subrogation rights to any claims R.F. or DelValle have against Reynaldo to the extent of the Medicaid benefits received incident to R.F.'s birth. *See* 470 I.A.C. 5–1–11 (1979).[1] However, we find it unnecessary to further address the state's subrogation claims because the state, in fact, has a direct claim against Reynaldo for the Medicaid expenses incurred incident to R.F.'s birth by virtue of the June 17, 1981 court order which so provided (R. pp. 86, 88). Accordingly, there is no question that IDPW and SDPW are entitled to be reimbursed by Reynaldo for the expenses incident to R.F.'s birth. The real issue is whether those expenses may be extracted from monies sent to R.F. for support via Reynaldo's military allotment.

The state essentially argues that for equitable reasons, IDPW and SDPW should have been allowed to deduct the Medicaid payments from R.F.'s support because, otherwise, R.F. and DelValle would receive a double benefit by receiving both the benefits and the surplus support which could have been used to reimburse the medical benefits. First, we note that the state fails to supply even one citation to authority to support its position and fails to develop a cogent argument in its brief other than to say the court's order is inequitable. Under such circumstances, we may reject the argument as unpersuasive. *See Kolley v. Harris* (1990), Ind.App., 553 N.E.2d 164, 168, *trans. denied;* App.R. 8.3(A)(7). In all cases appealed to this court, we presume that the trial court correctly decided the questions presented. It is incumbent upon the appellant to rebut this presumption in its brief by clearly demonstrating that the trial court erred. *Central Nat'l Bank of Greencastle v. Shoup* (1986), Ind.App., 501 N.E.2d 1090, 1098. In this case, the state fails to meet its burden.

We are unpersuaded by the state's argument that the trial court's order is inequitable because it allows R.F. and DelValle to receive a double benefit. Neither party disputes that the monies forwarded to R.F. via Reynaldo's military allotment were sent for R.F.'s support, not for past Medicaid expenses. Reynaldo sent the checks to the St. Joseph County clerk, at which time they were sent to the state, and eventually to R.F. If those same monies would have been sent directly to R.F. and DelValle from the clerk's office instead of to the state, then the funds would not have been available to the state to attach. Instead, the state would have had to proceed directly against Reynaldo to obtain its Medicaid reimbursement. Because, prior to the Deficit Reduction Act, DelValle could have removed R.F. from the AFDC program if she had known it was beneficial to the family, the failure of IDPW and SDPW to notify DelValle and R.F. of the correct amount of the monthly military allotment (and the giving of the incorrect amount), in response to several inquiries about the matter, prevented DelValle and R.F. from making an informed decision as to whether to keep the entire family on AFDC assistance or to remove R.F. from such assistance. IDPW and SDPW now attempt to claim that they may take advantage of its failure to the detriment of R.F. and DelValle. The trial court concluded otherwise, and the state fails to provide us with either an argument or citation to authority that merits reversal of the trial court's order.

Although it is clear that Reynaldo owes IDPW for the birth expenses advanced on behalf of R.F. by Medicaid, we will not allow IDPW to siphon funds from payments that were intended for R.F.'s support, or from excess funds that existed only because the state provided DelValle and R.F. with incorrect information. Instead, IDPW should proceed against Reynaldo in a separate action for the birth expenses.

---

1.  470 IAC 5–1–11 has been transferred from the Division of Family and Children to the Office of the Secretary of Family and Social Services by P.L. 9–1991, SEC. 131, effective January 1, 1992. As a result, the subrogation section is now codified at 405 IAC 1–1–13.

The trial court's order is, accordingly, affirmed.

STATON and SULLIVAN, JJ., concur.